**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| **NATIONAL FEDERATION OF THE BLIND OF TEXAS, INC., a Texas nonprofit corporation,** | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. _____** |
| **CITY OF ARLINGTON, TEXAS, a municipal corporation,** | ) ) ) ) | |
| **Defendant.** | ) ) ) | |

**COMPLAINT**

1.      This is a civil action brought pursuant to 42 U.S.C. § 1983 to challenge the constitutionality of the overreaching licensing and regulatory requirements imposed by the City of Arlington, Texas on charities engaging in fully protected speech activities in the form of charitable appeals for used clothing and household items in unattended donation receptacles. Plaintiff prays for a declaratory judgment and permanent injunction to enjoin Defendant from acting under color of state law to deprive Plaintiff of rights and privileges secured to it by the free speech provisions of the United States Constitution.

2.      On its face, Defendant's ordinance bans charitable donation bins from most, if not all, of Arlington, Texas, chilling Plaintiff's fully protected charitable speech and violating the First and Fourteenth Amendments to the United States Constitution. Defendant's ordinance is an unconstitutional abridgment of the First Amendment and chills free speech.

3.      Defendant enforced the unconstitutional, overly-broad ordinance against Plaintiff,

1

denying Plaintiff's right to place a charitable donation bin in Arlington, Texas.

4.    In enforcing the unconstitutional ordinance, Defendant exercised unbridled discretion in approving one bin placement that violates the ordinance but denying another that also violates the ordinance. The exercise of unbridled discretion risks freewheeling censorship and is an unconstitutional prior restraint on the freedom of speech.

5.    The ordinance lacks sufficient procedural safeguards to ensure that no prior restraint chills fully protected charitable solicitation in Arlington, Texas. Unless city officials exercise their unbridled discretion to approve an unlawful placement, the ordinance excludes charitable donation bins from virtually all of Arlington.

6.    Plaintiff asks that these unduly burdensome, overly broad requirements be declared facially unconstitutional and enjoined as violations of the First and Fourteenth Amendments to the United States Constitution.

## JURISDICTION

7.    Plaintiff brings its First Amendment claim under 42 U.S.C. § 1983 to redress deprivations by Defendant, acting under color of state law, of certain rights secured to Plaintiff and others by the First and Fourteenth Amendments to the United States Constitution. Jurisdiction is therefore conferred upon this Court pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(3) and (4); and 42 U.S.C. § 1983.

## VENUE

8.    Venue properly lies with this Court pursuant to Title 28 U.S.C. § 1391(b) since a substantial part of the events giving rise to this claim occurred in the Northern District of Texas, Dallas Division.

**DECLARATORY RELIEF**

9.      Authority for declaratory relief sought by Plaintiff is conferred upon this Court by 28 U.S.C. §§ 2201 and 2202, and by Fed. R. Civ. P. 57.

10.     Plaintiff is entitled to recovery of attorney's fees and costs in this matter pursuant to 42 U.S.C. § 1988.

**PARTIES**

11.     Plaintiff, National Federation of the Blind of Texas, Inc. ("the Blind" or "Plaintiff"), is a nonprofit corporation duly organized and existing under the laws of the State of Texas with its principal place of business in Dallas, Texas. The National Federation of the Blind is an organization of over 50,000 blind people, striving to promote equal opportunity for the blind. Founded in 1940, the National Federation has affiliates in every state, including Texas. Dedicated to the complete integration of the blind into society, Plaintiff works toward the removal of legal, economic, and societal barriers to full participation by blind people in employment, education, recreation, and all other aspects of community life. Plaintiff desires to solicit charitable contributions via donation bin in Arlington, Texas, and it applied for permits to engage in that protected speech activity in Fall 2020. *See* Exhibit M, ¶¶ 3-6, 10.

12.     Defendant City of Arlington, Texas ("City" or "Defendant") is a city of the State of Texas chartered pursuant to Article 11, Section 5 of the Texas Constitution. Through its legislative body, the City of Arlington adopts ordinances as needed for the health and welfare of the City and its inhabitants. The City of Arlington has promulgated Ordinance No. 18-044, which, codified as the "Donation Boxes Chapter" of the Code of the City of Arlington, Texas ("the Ordinance"), effectively bans charitable solicitations made via donation bin in most, if not all, of Arlington. The City of Arlington denied Plaintiff's application to place a donation bin in Arlington,

Texas, and affirmed that denial during each of Plaintiff's two administrative appeals.

## FACTUAL ALLEGATIONS

13. On August 7, 2018, the Arlington City Council passed Ordinance No. 18-044, enacting the current version of the Ordinance, which criminalizes a broad range of speech protected by the First Amendment and bans donation boxes in virtually all of Arlington, Texas.

14. The Ordinance defines "donation box" as "any drop-off box, container, trailer or other receptacle that is intended for use as a collection point for accepting donated textiles, clothing, shoes, books, toys, dishes, household items, or other salvageable items of personal property." Ord. § 2.01. These donation bins serve two functions for the National Federation of the Blind of Texas. First, they deliver a message that builds awareness about the organization's cause and, second, they communicate an appeal for support of that cause. Both messages are vital and fully protected by the First Amendment. *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 796 (1988).

15. The Ordinance states in relevant part:

> Donation boxes shall only be permitted to be placed on real property located within the following zoning use districts in the Unified Development Code: Industrial Manufacturing (IM), Light Industrial (LI), and General Commercial (GC)…. Donation boxes shall not be permitted to be placed on real property located within any other zoning use district.

Ordinance ("Ord.") § 3.01(C).

16. Arlington has 28 zoning use districts, "which are broadly grouped into residential, non-residential and mixed-use, and overlay districts."[1]

17. The City of Arlington has banned charitable donation bins in all but three (3) zoning use districts. The challenged Ordinance bans charitable speech from 25 of Arlington's 28 zones.

---

[1] See FAQS, City of Arlington, https://www.arlingtontx.gov/city_hall/departments/ planning_development_services/land_development/zoning__unified_development_code/faqs (July 10, 2021).

See Zoning Map of Arlington (Exhibit A).

18.     The enclosed zoning map of the City of Arlington (marked Exhibit A) shows the three zones in which donation bins may be placed in Arlington. These zones are marked green, yellow, and blue. The three permissible zones appear as a few small dots along the perimeter of the City and along the east side of the I-20 corridor and South Highway 157. The other 25 zoning districts comprising the near entirety of Arlington are greyed to reflect the near-complete location ban on charitable donation bins.

19.     The three zones in which donation bins are permitted are predominantly manufacturing and industrial areas, far from passersby and general foot traffic, shopping, and downtown. They are too remote for members of the general public who wish to know about the National Federation of the Blind of Texas and learn how the organization serves its community and at the same time support it with contributions of used clothing and household items.

20.     Rather than enforce the existing maintenance restrictions on donation bins in Arlington, Defendant banned them from downtown, community commercial districts, mixed use areas, and shopping centers where passersby might actually be found and where they would be able to see Plaintiff's charitable message and support the cause. The areas with general foot traffic where passersby are out exploring the City, running daily errands, and enjoying shopping and dining excursions are foreclosed to charitable organizations like the Blind. Yet those same areas are adorned with commercial messages. Instead of providing equal access for the message of the Blind and other charities to be heard, the City has, in fact, created a barrier.

21.     In the three zones in which donation bins are actually permitted, the Ordinance requires that the bins be hidden by a landscape setback or placed more than 40 feet from the public right-of-way, which obstructs the bins from public view. Ord. § 3.03(I).

22.    Any person who violates any provision of the Ordinance is "guilty of a misdemeanor punishable by a fine" of $500.00 and "[e]ach day the violation continues shall be a separate offense" and, therefore, a separate misdemeanor charge and fine. Ord. § 4.01(A).

23.    Plaintiff National Federation of the Blind of Texas has engaged in and continues to engage in charitable solicitation by placing donation bins in the State of Texas. Exhibit M, ¶ 6, 7. Charitable donation bins receive and collect unwanted, used clothing and household items from donors for reuse while spreading the charitable organization's mission. Charitable donation bin programs benefit the entire community by diverting items that otherwise would have entered the waste stream to charity. The donated items are sold at thrift with the proceeds going to the National Federation of the Blind of Texas and its charitable programs and activities in the State of Texas.

24.    The City's Staff Report acknowledges that "unattended donation (collection) boxes provide residents with a convenient means to donate items for reuse, a revenue mechanism for non-profit organizations, and the diversion of many items from the waste stream." Exhibit B, City of Arlington, Staff Report, Analysis ¶ 2.

25.    The City identifies its government interest in regulating charitable donation bins as follows: "the City wants to ensure that the collection boxes are maintained in a manner that minimizes the risk of blight." *Id.* To further its asserted interest in maintenance and the minimization of blight, the City of Arlington banned donation bins in virtually all of Arlington.

**Zoning Ban:  Family Thrift Center, 805 East Park Row**

26.    On November 10, 2020, Plaintiff applied to place a charitable donation bin in the parking lot of the Family Thrift Center located at 805 E. Park Row, Arlington, TX 76011. Exhibit C. The Family Thrift Center is a thrift clothing store located in the "Community Commercial" zoning district in Arlington, Texas. The Community Commercial zone is one of the 25 zones in

which charitable donation bins are prohibited.

27.     Plaintiff's application was submitted on behalf of the Blind by Merchandise Pickup Service ("MPS"). Exhibit C, p. 1. MPS is a professional fundraising consultant who assists the Blind with its charitable donation bins and other charitable solicitation activity throughout the State of Texas, including submitting applications for placement where required and placing and maintaining charitable donation bins so that they are kept clean, tidy, and free of debris. Plaintiff is listed in the application as the charitable organization providing the donation box. *Id.*

28.     On November 17, 2020, the City of Arlington denied Plaintiff's permit to place a bin at 805 E. Park Row, Arlington, TX 76011, because the placement violates the zoning ban in the Ordinance. Exhibit D.

29.     On December 3, 2020, by and through MPS and counsel, Plaintiff submitted notice of appeal and requested an administrative hearing of the denial pursuant to section 3.09 of the Ordinance. Exhibit E. Plaintiff explained that charitable donation bins are fully protected speech, and the Ordinance operates a location ban on that protected speech in Arlington, Texas. Accordingly, Plaintiff explained, the "Ordinance is an unconstitutional abridgment of the freedom of speech on its face and as applied" to Plaintiff. *Id.* at ¶ 4.

30.     The Ordinance states, in relevant part: "The appeal shall be conducted within twenty (20) days of the date on which the notice of appeal was filed with the Administrator." Ord. § 3.09(B). No appeal was conducted within the statutorily required 20 days.

31.     On January 7, 2020, by and through MPS and counsel, Plaintiff sent a follow-up email to Mr. Brian Daugherty, Code Compliance Services Administrator, noting that more than 20 days had passed, and Plaintiff had not received a hearing date. Plaintiff explained that the failure to follow procedural safeguards and to afford due process violates the First and Fourteenth

Amendments to the United States Constitution and is an impermissible prior restraint on fully protected speech. Exhibit F.

32.     On January 13, 2021, Mr. Daugherty conducted an administrative hearing of the denial of Plaintiff's application to place a charitable donation bin. On behalf of Plaintiff, MPS and counsel were present. On behalf of Defendant, Misty Gutierrez, Arlington Code Compliance Field Operations Manager, was present. Mr. Daugherty presided.

33.     During the hearing, Ms. Gutierrez testified that Plaintiff's application was denied because the placement was in the Community Commercial zone, which is not a permissible zone.

34.     When asked whether commercial signs were allowed in this same "Community Commercial" zone, Ms. Gutierrez confirmed they were.

35.     When asked if she was aware that charitable solicitation is fully protected speech and entitled to greater protection than commercial speech, she responded that she was not aware of that fact.

36.     On January 13, 2021, Mr. Daugherty issued an order sustaining the denial of the donation box permit to Plaintiff on the ground that it was not in an allowed zoning district. Exhibit G. The order noted that Plaintiff may "appeal this finding to the City Appeal Officer in accordance with Section 3.09 D.E. and Section 3.10 of the Donation Boxes Chapter."

37.     Mr. Daugherty did not specify who the "City Appeal Officer" is, nor to whom any appeal should specifically be directed. The Ordinance and the City of Arlington's website are silent as to who the "City Appeal Officer" is for further appealing a denial of protected speech.

38.     After several emails and telephone calls, Plaintiff confirmed through the City Attorney's Office that the "City Appeal Officer" for appealing a denial under the Ordinance is Gilbert Perales, Deputy City Manager.

39.     On January 21, 2021, by and through MPS and counsel, Plaintiff sent a letter to Gilbert Perales requesting a second administrative hearing. Exhibit H.

40.     On February 2, 2021, Mr. Perales conducted a second administrative hearing on the denial of Plaintiff's application. On behalf of Plaintiff, MPS and counsel were present. On behalf of Defendant, Misty Gutierrez, Arlington Code Compliance Field Operations Manager, and Galen Gatten, Senior City Attorney, were present. Mr. Perales presided.

41.     During the second appeal hearing, the City of Arlington confirmed it has banned charitable donation bins from 25 of 28 zones in Arlington. However, the City of Arlington does not likewise ban commercial signs in any zone. By and through its disparate Code provisions, the City of Arlington treats less-protected commercial speech more favorably than fully protected charitable speech.

42.     On February 9, 2021, Mr. Perales issued his final appeal ruling and affirmed the denial of Plaintiff's application to place a charitable donation bin at the Family Thrift Center located at 805 E. Park Row, Arlington, TX 76011. Exhibit I. Mr. Perales' stated reason for the denial was that the desired placement is located in an impermissible zone.

**Setback Restriction:  VFW Post, 1200 Harris Road**

43.     Within the three zones in which donation bins are actually allowed, Defendant obstructs them from public view by screening them behind a 3-foot, opaque landscape setback or requiring that they be placed at least 40 feet from the roadway, which effectively hides them from public view.

44.     The Ordinance states, in relevant part: "No donation box shall be permitted within the row of parking adjacent to [a] street right-of-way unless an existing landscape setback is present in good condition. If there is no existing landscape setback, a donation box shall not be

9

placed less than 40 feet from the adjacent street right-of-way." Ord. § 3.03(I).

45.    On November 11, 2020, by and through MPS, Plaintiff applied to place a charitable donation bin in the parking lot of the Veterans of Foreign Wars Post 6111 ("VFW"), located at 1200 West Harris Road, Arlington, Texas 76001. Exhibit J. The VFW is in the "Industrial Manufacturing" zone. The charitable donation bin was placed within 40 feet of the public right-of-way. More specifically, the bin was placed at 36 feet from the roadway. There is no landscape setback on the property on which the bin was placed.

46.    On or around December 3, 2020, the City of Arlington approved the placement of the charitable donation bin despite that it violated the Ordinance's 40-foot setback requirement. Rather than sending an approval letter, Defendant left a voicemail confirming the approval.

47.    On or around January 19, 2021, Plaintiff moved the donation bin to the other side of the VFW sign pole at 1200 W. Harris Road and notified the City of Arlington that the donation bin had been moved by submitting a revised application. The revised application sought to place the charitable donation bin 35 feet from the public right-of-way. Exhibit K.

48.    On or around February 5, 2021, the City of Arlington again approved the application despite its unlawful placement within 40 feet of the roadway.

49.    By and through MPS, Plaintiff asked Defendant on multiple occasions why the application for its placement at the VFW was approved even though it is within 40 feet of the right-of-way. Defendant refused to provide an answer.

50.    The grassy area adjacent to Harris Road along the VFW property is not a landscape setback as that term is defined by the Uniform Development Code ("UDC"). A landscape setback is "a setback that is adjacent to a public street in which landscaping is required…." UDC § 12.7.1 (emphasis added).

10

51.      Where landscaping is required, a landscape setback must include a 15-foot buffer containing no more than 40% grass cover, at least 14 plants every 50 feet, including 50% evergreen shrubs, and at least one tree for every 35 to 55 feet. UDC § 5.2.2(B). In addition, landscaping around parking lots must comply with the landscaping screening requirements of Section 5.2.2.E.3.b. The parking lot screening "shall be a minimum height of three feet," and it must be opaque, consisting of a combination of screening shrubs and a berm or a fence. UDC § 5.2.2(E)(3)(b)(i)-(iii).

52.      Under Sections 5.1.1 and 5.1.3 of the UDC, existing uses are grandfathered into the landscaping requirements of Article 5, including all perimeter landscape requirements and parking lot screening requirements. Therefore, landscaping is not required on grandfathered properties. UDC §§ 5.1.1, 5.1.3.

53.      Because the VFW at 1200 Harris Road is grandfathered into and exempt from the landscape requirements of Article 5, landscaping is not required on the property and, therefore, it is not a landscape setback within the meaning of the Code.

54.      The lack of landscaping at 1200 Harris Road is apparent by simply looking at the property. See photograph attached as Exhibit L. The VFW property at 1200 Harris Road contains neither a landscape setback nor parking lot screening. The narrow grassy strip adjacent to Harris Road, between the road and the parking lot, has 100% grass cover with no trees, shrubs, plants, or other landscaping, nor a fence. In fact, the grassy strip appears to have a storm water runoff and drain and is, therefore, likely a drainage easement.

55.      Even if Plaintiff placed the charitable donation bin on a property that had a landscape setback in good condition (thereby negating the 40-foot placement restriction), the Ordinance would still block the bins from public view by virtue of the opaque screening

requirements under the landscape setback provisions of the Code. Specifically, the perimeter setback landscaping and parking lot screening requirements of the UDC would hide the bin from public view. The parking lot screening requirements alone would have an opaque combination of screening shrubs and berm or a fence that is <u>at least three feet (3 ft.) in height</u>, which would obstruct the view of the charitable donation bin from the right-of-way.

56.     In this case, the 40-foot placement restriction in the Ordinance controls because there is no landscape setback in good condition, and Plaintiff's placement of its donation bin at 35 feet from the right-of-way fails to comply the with that minimum-40-foot placement restriction.

57.     The City of Arlington approved the application even though it fails to comply with the 40-foot placement restriction. Defendant has exercised unbridled discretion in approving one illegal placement while denying another illegal placement under the Ordinance.

58.     Even at 35 feet, the placement at 1200 Harris Street blocks the message on the bin from public view and, therefore, it cannot be seen from the right-of-way. A bin placement 40 feet or farther from the roadway could hardly improve the City's intentional screening of these charitable donation bins in the few zones in which they are permitted.

59.     Placement restrictions of more than 25 feet from the public right-of-way obstruct the signage on the donation bin from public view. Such setback requirements may screen the entire bin from view. Thus, donors cannot see the charitable message, including what charitable organization the bin benefits, and in many cases, they cannot see the bin itself.

60.     Article 7 of the UDC allows commercial signs to be placed within 10 feet of a public right-of-way with no landscaping barriers. UDC § 7.7.4(B). Accordingly, Defendant treats commercial speech more favorably than charitable speech in Arlington, Texas.

61.      In distinguishing commercial speech from fully protected charitable speech, the

Supreme Court explained that charitable solicitation is entitled to heightened protection because it "does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics of goods and services." *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). Any restriction imposed on charitable donation bins, therefore, must "be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues." *Id.* Charitable donation bins are fully protected charitable speech under the First Amendment. The Supreme Court has long afforded the strictest First Amendment protection to charitable solicitations because "charitable appeals for funds . . . involve a variety of speech interests – communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes." *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 212-13 (5th Cir. 2011) (quoting *Schaumburg*, 444 U.S. at 632).

62.     Indeed, charitable donation bins communicate a charitable message, explicitly advocate for the donation of unwanted clothing and household goods to that charitable cause, and "implicitly advocate for that charity's views, ideas, goals, causes, and values." *Id.* Passersby who see "a donation bin may be motivated by it to research the charity" to determine whether to donate to it and, "in so doing, the passer-by will gain new information about the social problem the charity seeks to remedy." *Planet Aid v. City of St. Johns*, 782 F.3d 318, 325 (6th Cir. 2015). A "donation bin may ultimately motivate citizens to donate clothing or shoes even if they had not previously considered doing so." *Id.* Charitable donation bins thus "mirror the passive speaker on the side of the road, holding a sign drawing attention to his cause." *Id.* at 330.

63.     It is also an inescapable fact that charitable organizations often need to utilize the

13

assistance of professionals because they lack the resources to perform certain functions on their own. The Supreme Court has long held that professionals who are compensated to speak on behalf of charitable organizations are entitled to the same First Amendment protection as if the charitable organization was speaking for itself. *Riley*, 487 U.S. at 801.

64.     Overly broad, prophylactic bans and restrictions on charitable donation bins, such as these, have repeatedly been stricken by the Federal Circuits, including the Fifth Circuit. *Abbott*, 647 F.3d at 213-14; *Planet Aid*, 782 F.3d at 325, 330-31.

65.     The Ordinance imposes a location ban and significant burdens on the Blind's ability to place charitable donation bins in Arlington thereby foreclosing and criminalizing constitutionally protected speech in virtually all of Arlington.

66.     The Ordinance and its registration regime interfere with the Blind's First Amendment rights in violation of the United States Constitution.

67.      The Ordinance harms the Blind and others similarly situated by granting unbridled discretion to the City Manager to approve or deny an application for a permit to engage in fully protected speech and imposing a prior restraint on their charitable solicitation in violation of the First and Fourteenth Amendments to the United States Constitution. The relief sought in this complaint would fully redress that harm.

68.     Because of the City of Arlington's location ban and severe placement requirements, the Blind has been unable to legally place donation bins in Arlington, Texas.

69.     An actual and substantial controversy exists between Plaintiff and Defendant as to the parties' respective rights and responsibilities.

70.     A judicial determination of the parties' rights and the constitutionality of Defendant's Ordinance will give the Blind relief by establishing that the City of Arlington is not

14

entitled to enforce unconstitutional conditions on a charitable organization's speech and by allowing the Blind to speak without abiding by these unconstitutional conditions.

71.     The Blind has no plain, speedy, and adequate remedy at law to address the violations of its constitutional rights under color of state law. Absent judicial intervention, the Blind will suffer irreparable injury as a result of the burden on its right to speak.

72.     An injunction restraining the City of Arlington from enforcing the unconstitutional zoning ban and burdensome placement restrictions challenged in this action will remedy the Blind's injury.

73.     An injunction restraining the City of Arlington from unconstitutionally enforcing the challenged zoning ban and overly burdensome placement requirements will serve the public interest. The City of Arlington has no interest in violating the Blind's First Amendment freedoms, and an injunction will further freedom of speech in Arlington.

74.     Absent the requested relief, the Ordinance places Plaintiff in an untenable position by forcing it to choose, on the one hand, between complying with an unconstitutionally burdensome law that imposes an impermissible prior restraint on fully protected speech and, on the other, subjecting itself to potential enforcement actions and reprisals by the City and the possibility of adverse publicity and reduced charitable contributions because of Plaintiff's status as an alleged violator of the law.

75.     Monetary damages cannot compensate Plaintiff for the loss of its constitutionally protected rights under the First and Fourteenth Amendments to the United States Constitution. With no adequate remedy at law to redress Plaintiff's grievances, Plaintiff's ability to engage in protected speech will be unconstitutionally abridged unless and until Defendant is enjoined from enforcing the Ordinance.

## COUNT I

### U.S. Const. amend. I, 42 U.S.C. § 1983

### Violation of the First Amendment
### Zoning Ban

76.     Plaintiff incorporates the allegations in the preceding paragraphs.

77.     The First Amendment of the United States Constitution guarantees the right of "the freedom of speech." U.S. Const. amend. I.

78.     Charitable solicitation is entitled to heightened protection under the First Amendment. *Riley*, 487 U.S. at 789. Federal courts have repeatedly held that charitable solicitation via donation bin is a constitutionally protected activity and that laws which burden the ability of charitable organizations to solicit contributions on behalf of worthwhile causes are presumptively invalid. *Abbott*, 647 F.3d at 212-14; *Planet Aid*, 782 F.3d at 325, 330-31.

79.     Like in-person communication, charitable donation bins communicate information, disseminate and propagate views and ideas, and advocate causes. "The mere inclusion of the name of a charity on a donation box *communicates* information about the beneficiary of the benevolence and explicitly *advocates* for the donation of clothing and household goods to that particular charity." *Abbott*, 647 F.3d at 213 (emphasis added). Donation bins "implicitly *advocate* for that charity's views, ideas, goals, causes, and values." *Id.* (emphasis added).

80.     The Ordinance bans charitable donation bins from 25 of 28 zones thereby foreclosing, and criminalizing, constitutionally protected speech in virtually all of Arlington.

81.     The zoning ban operates as a de facto location ban on fully protected charitable solicitation. *Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 671 (E.D. La. 2017). Such blanket prohibitions have long been found to be unconstitutional. *Id.*; *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 815 (2000); *Planet Aid*, 782 F.3d at 330; *Browne v. City of Grand Junction*,

136 F. Supp. 3d 1276, 1292-93 (D. Colo. 2015).

82.    Ordinances that target charitable donation bins for regulation and restriction are content based because they target a specific category of speech by subject matter and, therefore, require strict scrutiny. *Planet Aid*, 782 F.3d at 328-30; *Playboy Entm't Grp.*, 529 U.S. at 815.

83.    The legislative history of the Ordinance demonstrates the City's intent to target charitable speech and, specifically, charitable donation bins. Because the Ordinance targets the subject matter and purpose of the speech, it is content based.

84.    Because the Ordinance is not narrowly tailored to achieve a compelling government interest, it fails strict scrutiny. *Playboy Entm't Grp.*, 529 U.S. at 815; *Riley*, 487 U.S. at 789-94; *Abbott*, 647 F.3d at 213-14; *Planet Aid*, 782 F.3d at 330-31.

85.    Ample, less restrictive alternatives are available to the City to further its interest in maintaining the donation bins to ensure that they are kept neat and tidy and the area in and around the bins remain free of debris. The existing maintenance and enforcement restrictions expressly prohibit the very ill that the City seeks to cure by banning the charitable speech. Banning protected speech in virtually all of Arlington restricts substantially more speech than is reasonably necessary to achieve the City's stated ends. Therefore, the ban is not narrowly tailored to further Defendant's stated interest.

86.    The Ordinance is over-inclusive because it prohibits protected speech that poses no threat to public safety. *Browne*, 136 F. Supp. 3d at 1292. Rather than implement and enforce maintenance restrictions for charitable donation bins, the City took a sledgehammer to the speech, banning all charitable donation bins including those that pose no threat to public health or safety.

87.    Moreover, Defendant does not ban commercial signs in any zone and, therefore, treats lesser-protected commercial speech more favorably than fully protected charitable speech.

88.     Because the ban is not narrowly tailored, it fails strict scrutiny.

89.     The ban's lack of tailoring would fail under any level of First Amendment scrutiny.

90.     When reviewing laws that burden charitable solicitation, the Supreme Court has consistently invalidated "prophylactic, imprecise, and unduly burdensome rule[s]" governing charitable solicitation where "more benign and narrowly tailored options are available." *Riley*, 487 U.S. at 800; *NAACP v. Button*, 371 U.S. 415, 438 (1963) ("broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone. . . .").

91.     Accordingly, the City's location ban is facially unconstitutional in most, if not all, of its applications and will cause irreparable injury to the Blind and others similarly situated. The location ban imposes an impermissible burden on Plaintiff's right of free speech in violation of the First Amendment and 42 U.S.C. § 1983.

## **COUNT II**

### **U.S. Const. amend. I, 42 U.S.C. § 1983**

### **Violation of the First Amendment**
### **Undue Setback Burden**

92.     Plaintiff incorporates the allegations in the preceding paragraphs.

93.     The Ordinance's setback requirement violates the First Amendment rights of the Blind by requiring that its charitable donation bins be placed behind 3-foot opaque, landscape setbacks or, if no landscape setback, 40 feet from the roadway, both of which obstruct the bins from public view in the few remaining zones in which Defendant permits the protected speech. This setback restriction is an undue burden on Plaintiff's right to free speech and an abridgment of the First Amendment.

94.     The severe location and placement restrictions contained in the Ordinance obstruct the charitable message from public view and, in some cases, completely block the bin's visibility.

This hampers, if not destroys, the communicative impact of the message.

95.    Because the Ordinance targets charitable speech and, in particular, charitable donation bins, it is content based.

96.    Content-based restrictions require strict First Amendment scrutiny.

97.    The setback restriction is not narrowly tailored to further the City's stated interests and, therefore, it fails strict scrutiny.

98.    The existing maintenance and enforcement restrictions contained in the Ordinance already adequately address all of the City's concerns in this case. Additional penal provisions also apply to prevent and punish malfeasance under the Ordinance. Accordingly, the severe placement restriction is not the least restrictive alternative, and it silences substantially more speech than is reasonably necessary to achieve its end.

99.    The Ordinance's lack of tailoring fails under any level of First Amendment scrutiny.

100.    In addition, Defendant's placement restriction treats lesser-protected commercial speech more favorably than fully protected charitable speech. The City allows commercial signs to be placed within 10 feet of the public road, viewable by passersby, but restricts the placement of charitable donation bins to greater than 40 feet from the road or hidden behind opaque landscaping. Thus, those who may wish to make a charitable contribution will not because they cannot see the bins that are hidden from public view.

101.    These setback restrictions impose an impermissible burden on Plaintiff's right of free speech in violation of the First Amendment.

102.    The Ordinance therefore is unconstitutional on its face and as applied to Plaintiff and will cause irreparable injury to the Blind.

## COUNT III

### U.S. Const. amend. I, 42 U.S.C. § 1983

### Violation of the First Amendment
### Overbroad

103.    Plaintiff incorporates the allegations in the preceding paragraphs.

104.    The Ordinance restricts Plaintiff's communications with donors. It suppresses fully protected speech without employing sensitive tools. *Speiser v. Randall*, 357 U.S. 513, 525 (1958). The Ordinance reaches more broadly than is reasonably necessary to protect legitimate state interests, and therefore it violates the First Amendment.

105.    Because the Ordinance forecloses Plaintiff's charitable speech in virtually all of Arlington, it chills the free expression of protected speech. *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797-99 (1984).

106.    The First Amendment prohibits laws which sweep protected speech within their prohibitions and result in a chilling effect on persons who refrain from protected speech for fear of prosecution. *Cantwell v. Conn.*, 310 U.S. 296, 308 (1940).

107.    The Ordinance therefore is overbroad in a substantial number, if not all, of its applications and will cause irreparable injury to the Blind.

## COUNT IV

### U.S. Const. amend. I, 42 U.S.C. § 1983

### Violation of the First Amendment
### Prior Restraint

108.    Plaintiff incorporates the allegations in the preceding paragraphs.

109.    The Ordinance silences the protected speech of the Blind prior to its utterance. This imposes an unconstitutional prior restraint in violation of the First Amendment. *Near v. Minn.*, 283

U.S. 697 (1931). A prior restraint bears a heavy burden against constitutional validity. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).

110. The Ordinance institutes an administrative licensing scheme that requires Plaintiff to apply for and receive a charitable donation bin permit before it may communicate with, and seek charitable contributions from, residents of Arlington via donation bin. Administrative licensing schemes are prior restraints. This is an impermissible prior restraint of free speech because it lacks adequate procedural safeguards and places unbridled discretion in the hands of Defendant to delay and censor protected speech. As such, the Ordinance, and Defendant's disparate rulings on Plaintiff's applications to engage in protected speech thereunder, violate the First Amendment.

111. Municipalities may punish unlawful speech, but they may not silence fully protected speech before it is to occur. *Near*, 283 U.S. at 716.

112. The Ordinance therefore is unconstitutional on its face and as applied to Plaintiff and will cause irreparable injury to the Blind.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief and judgment from this Court:

(1) Declare that the Ordinance's location ban and placement restrictions impose impermissible burdens on Plaintiff's right of free speech, in violation of the First Amendment;

(2) Declare that the Ordinance's location ban and placement restrictions are overbroad on their face, sweeping the protected speech of charitable organizations, such as Plaintiff's, within its proscription in violation of the First Amendment;

(3) Declare that the Ordinance is an impermissible prior restraint of Plaintiff's speech,

in violation of the First Amendment of the United States Constitution;

> (4)    Enjoin Defendant from enforcing the Ordinance;

> (5)    Award Plaintiff its costs and disbursements in this action, including reasonable

attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988; and

> (6)    Grant Plaintiff such other and further relief as may be just and proper.


DATED this 26TH day of August 2021.

                                        Respectfully submitted,

                            By  /s/ **Andrew R. Graben**
                                Andrew R. Graben
                                HILGERS GRABEN PLLC
                                10000 N. Central Expy., Suite 400
                                Dallas, Texas 75231
                                214-842-6828
                                FAX: 402-413-1880
                                agraben@hilgersgraben.com

                                Karen Donnelly (*pro hac vice* pending)
                                Errol Copilevitz (*pro hac vice* pending)
                                COPILEVITZ, LAM & RANEY, P.C.
                                310 W. 20th Street, Suite 300
                                Kansas City, MO 64108
                                (816) 472-9000
                                FAX: (816) 472-5000
                                kdonnelly@clrkc.com
                                ***Attorneys for Plaintiff***