UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL FEDERATION OF THE | § | |
| BLIND OF TEXAS INC., and ARMS OF | § | |
| HOPE, | § | |
| | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-2028-B |
| | § | |
| CITY OF ARLINGTON, TEXAS, | § | |
| | § | |
|    Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiffs National Federation of the Blind of Texas Inc. (NFBTX) and Arms of Hope (AOH) (collectively, Plaintiffs)' Motion for Partial Summary Judgment (Doc. 50) and Defendant City of Arlington, Texas (Arlington or the City)'s Motion for Summary Judgment (Doc. 47). For the reasons given below, the Court **GRANTS IN PART** and **DENIES IN PART** both motions.

## I.

## BACKGROUND

This is a First Amendment freedom of speech case about unattended donation collection bins (donation bins). Plaintiffs "are charitable, nonprofit organizations operating in the State of Texas." Doc. 35, Am. Compl., ¶ 11. NFBTX is "[d]edicated to the complete integration of the blind into society . . . [and] works toward the removal of legal, economic, and societal barriers to full participation by blind people in employment, education, recreation, and all other aspects of community life." *Id.* "AOH focuses on providing a safe home and Christian environment for children

and single-mother families in need . . . [so they can] avoid homelessness, poverty, abuse, and neglect." *Id.*

Both Plaintiffs partner with third-party companies to place donation bins bearing signage about Plaintiffs and their missions at various Texas locations. *Id.* ¶¶ 23, 27. The bins placed by Plaintiffs through their third-party partners "receive and collect unwanted, used clothing and household items from donors for reuse while spreading the charitable organization's mission." *Id.* ¶ 23. Plaintiffs, through the third-party partners, also collect donated goods by scheduled truck pick ups at donors' residences. Doc. 49, Def.'s App., 314, 427.[1] The third-party partners pay Plaintiffs per-pound for the donated items and then resell the items to thrift shops. *Id.* at 326–27, 346, 353, 425. The donation bins are a source of revenue for Plaintiffs, who emphasize that the bins also perform two communicative functions: "First, they deliver a message that builds awareness about the organization's cause and, second, they communicate an appeal for support of that cause." Doc. 35, Am. Compl., ¶ 14.

While such donation bins benefit Plaintiffs, they have burdened Arlington. The bins—which are generally "unattended, stand-alone boxes, approximately six feet tall, five feet wide and four feet deep" and "typically placed in parking lots"—were "[u]ntil recently . . . unregulated in Arlington, and [their] number . . . had begun to proliferate." Doc. 48, Def.'s Br., 3–4 (citing Doc. 49, Def.'s App., 301). "By 2015, there were at least 90 unattended donation boxes[2] dispersed throughout

---

[1] The appendices submitted by both parties include some documents with multiple page numbers. For clarity's sake, the Court cites to the "APP." page numbers for Defendant's Appendix (Doc. 49) and to the "APP" page numbers for Plaintiffs' Appendix (Doc. 58), but omits the APP. or APP prefixes to those page numbers.

[2] Arlington's ordinance that is the subject of this dispute and Arlington's briefing refer to these receptacles as "donation boxes" while Plaintiffs term them "donation bins." In this Order, the Court will generally use the term "donation bins" but considers the terms interchangeable.

Arlington—many in the city center." Doc. 49, Def.'s App., 301. The City's "code enforcement officers were constantly fielding complaints from business owners, property owners, and residents concerning littered, unmaintained, and hazardous donation boxes on their street corners, parking lots, and properties." *Id.* Common issues with the bins included overflow of items, illegal dumping, broken glass and litter near the bins, and scavenging. *Id.* Arlington found it difficult to track down donation bin owners and enforce bin-related code violations with a limited code-compliance staff. *Id.* at 302.

Arlington adopted an ordinance regulating donation bins to address these issues. After engaging with stakeholders and the public, *id.* at 110–11, 120–51, and completing "a three-month study of donation boxes and their adverse secondary effects in the City" (the Visual Survey), Doc. 48, Def.'s Br., 8; Doc. 49, Def.'s App., at 5–109, as well as a two-month supplemental survey (the Supplemental Survey), Doc. 49, Def.'s App., 217–99, Arlington enacted Ordinance 18-044, codified as the 'Donation Boxes Chapter' of the Code of the City of Arlington, Texas (the Ordinance). Doc. 49, Def.'s App., 142–51.

The Ordinance makes it "unlawful for any person to place or maintain, or allow to be placed or maintained, a donation box at any location within the City of Arlington, without a valid permit issued in accordance with this Article." Arlington, Tex., Ordinance 18-044, § 3.01(A) (Aug. 21, 2018). "'Person' includes an individual, sole proprietorship, corporation, association, nonprofit corporation, partnership, joint venture, a limited liability company, estate, trust, public or private organization, or any other legal entity." *Id.* § 2.01. "'Donation Box' means any drop-off box, container, trailer or other receptacle that is intended for use as a collection point for accepting

donated textiles, clothing, shoes, books, toys, dishes, household items, or other salvageable items of personal property." *Id.*

Section 3.01(C) (the Zoning Restrictions) restricts donation box placement to:

[T]he following zoning use districts in the Unified Development Code: Industrial Manufacturing (IM), Light Industrial (LI), and General Commercial (GC). Donation boxes may also be permitted on real property zoned Planned Development with the above-referenced underlying zoning use districts. Donation boxes shall not be permitted to be placed on real property located within any other zoning use districts.

*Id.* § 3.01(C).

Section 3.03 sets out eleven requirements to obtain a permit. *Id.* § 3.03. One of the eleven, Section 3.03(I) (the Setback Requirement) provides that: "No donation box shall be permitted within the row of parking adjacent to street right-of-way unless an existing landscape setback is present in good condition. If there is no existing landscape setback, a donation box shall not be placed less than 40 feet from the adjacent street right-of-way." *Id.* § 3.03(I).

Sections 3.04 and 3.09 describe the permit application and appeals process (the Permitting Requirements). *Id.* §§ 3.04, 3.09. Applicants must "file a written, sworn application with the Administrator," with "[a] separate permit and application . . . required for each donation box regardless of the ownership thereof," and pay an "annual permit fee." *Id.* § 3.04 (A)–(C). "Any person denied a permit shall have the right to appeal such action in accordance with the provisions of Section 3.09." *Id.* § 3.04(D). Section 3.09 provides an administrative appeals process to be conducted by the Administrator, whose decision is appealable to the City Appeal Officer. *Id.* § 3.09. The process for the City Appeal Officer's review and decision is set forth in Section 3.10. *Id.* § 3.10. If a permit is granted, the donation bin must be maintained pursuant to the requirements of Section 3.06, which include servicing the bin, keeping it free of debris, removing any donation left outside

the bin, and maintaining its structural and visual integrity. *Id.* § 3.06. The bin must also display its owner's contact information and a disclosure warning donors that donated items must fit inside. *Id.* § 3.03(J)–(K). Among other restrictions, a bin may not be placed where it will impede traffic or impair driver sightlines; block access to easements, fire hydrants, or required parking spaces; or sit within 200 feet of any residential dwelling use district or in a drainage easement or floodplain. *Id.* § 3.06.

Repeat violations of these requirements may result in permit revocation and impoundment of the offending donation bin. *Id.* § 3.07(A), (D). If a permit holder's permit is revoked, they cannot be issued another permit until after a one-year waiting period. *Id.* § 3.07(E). A violation of the Ordinance is a misdemeanor offense punishable by fine, and the Ordinance is cumulative with other city laws. *Id.* at 9. If any part of the Ordinance is found to be unconstitutional, that part is severable. *See id.*

After the Ordinance's enactment, NFBTX filed suit on August 26, 2021, alleging that the Ordinance violates its First Amendment right to engage in charitable speech. Doc. 1, Compl. In January 2022, the Court permitted AOH's joinder and Plaintiffs filed the operative Amended Complaint. *Nat'l Fed'n of the Blind of Tex. Inc. v. City of Arlington*, 2022 WL 93941, at *4 (N.D. Tex. Jan. 10, 2022); Doc. 35, Am. Compl.

Plaintiffs challenge the Ordinance as facially unconstitutional for four reasons: (1) as a zoning ban; (2) for imposing an unduly burdensome setback restriction; (3) as overbroad; and (4) as a prior restraint on speech. Doc. 35, Am. Compl., ¶¶ 76–112. They seek declaratory and injunctive relief under 42 U.S.C. § 1983, asking the Court to declare the Ordinance unconstitutional on these bases

and to enjoin Arlington from enforcing the Ordinance. *Id.* at 1, 22. NFBTX also challenges the setback restriction as applied to NFBTX's permit applications. *Id.* ¶ 102.

After conclusion of an expedited discovery period, Plaintiffs moved for partial summary judgment "on the facial claims raised in Counts I, III, and IV of their First Amended Complaint." Doc. 50, Pls.' Mot., 1. Arlington moved for summary judgment on all four of Plaintiffs' claims. Doc. 47, Def.'s Mot., 1. The motions are fully briefed and ripe for review. The Court addresses them below.

## II.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law . . . identif[ies] which facts are material," and only a "dispute[] over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the facts and the inferences drawn from the facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Once the summary-judgment movant has met its burden, "the non[-]movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citation omitted). A non-movant may not simply rely on the Court to "sift through the record" to find a fact issue, but must point to specific evidence in the record and articulate precisely how that evidence supports the challenged

claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant provides must raise "more than . . . some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

## III.

## ANALYSIS

Plaintiffs move for summary judgment on three of their four declaratory judgment claims, asking the Court to find that the Ordinance is: (1) an unconstitutional content-based zoning ban on a protected form of speech, (2) an unconstitutional prior restraint, and (3) unconstitutionally overbroad.[3] Doc. 50, Pls.' Mot., 1–2; Doc. 35, Am. Compl, ¶¶ 77–91, 104–112. Arlington moves for summary judgment dismissing all four of Plaintiffs' claims with prejudice. Doc. 47, Def.'s Mot., 1.

"In analyzing a First Amendment claim, the Court first determines whether the targeted speech is protected, and, if so, what level of scrutiny applies; and second, determines whether the Ordinance survives the appropriate level of scrutiny." *Ass'n of Club Execs. of Dall., Inc. v. City of Dallas*, 2022 WL 1642470, at *3 (N.D. Tex. May 24, 2022) (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 557 (2011)). Plaintiffs argue that the Ordinance is subject to strict scrutiny "for two separate and independent reasons." Doc. 51, Pls.'s Br., 3 (citing *Baker v. City of Fort Worth*, 506 F. Supp. 3d 413, 420 (N.D. Tex. 2020)). First, they allege it is a content-based regulation. *Id.*

---

[3] NFBTX, individually, also asserts an as-applied challenge to the Setback Requirement. Doc. 35, Am. Compl., ¶¶ 77–112. The parties have not argued and the Court has not considered NFBTX's as-applied claim in deciding these motions.

Second, they allege it is a prior restraint on protected speech. *Id.* Arlington argues that the Ordinance is subject to intermediate scrutiny because it is content neutral. Doc. 48, Def.'s Br., 18.

Below, the Court first addresses the threshold issue of Plaintiffs' standing. Then, it considers whether the Ordinance is content based or content neutral and, finding that it is content neutral, applies intermediate scrutiny to the Zoning Restrictions and Setback Requirement. Finally, it addresses whether the Permitting Requirements are an unconstitutional prior restraint on speech.

A.    *Standing*

"[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 208 (5th Cir. 2011) (alteration in original) (quoting *Davis v. FEC*, 554 U.S. 724, 733 (2008)). Standing requires that "a claimant . . . present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Id.* at 208–09. "To prove an injury in fact sufficient 'to raise a First Amendment facial challenge, . . . a plaintiff must produce evidence of an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.'" *Id.* (quoting *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008)). "Specifically, plaintiffs must demonstrate a 'serious [ ] interest [ ]' in acting contrary to a statute." *Id.* (alterations in original) (quoting *Barbour*, 529 F.3d at 545 n.8). Plaintiffs "bear the burden to demonstrate standing for each claim they seek to press." *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Arlington claims that "Plaintiffs have shown no real intent to act contrary to any provision of the Ordinance" other than the Zoning Restrictions, Setback Requirement, and Permitting

Requirements, and therefore have standing to challenge only those provisions. Doc. 48, Def.'s Mot., 27–29; Doc. 54, Def.'s Resp., 21 (citing *Barbour*, 529 F.3d at 545). Arlington additionally argues that AOH has standing for only the Zoning Restrictions challenge. Doc. 48, Def.'s Mot., 28.

Plaintiffs respond that they "do not challenge any other provisions [beyond the Zoning Restrictions, Setback Requirement, and Permitting Requirements] as overbroad." Doc. 56, Pls.' Resp., 36. They claim Arlington, by its assertion that Plaintiff's standing should be limited to these three provisions, admits Plaintiffs do have standing to challenge the three. *Id.*

To begin, the Court emphasizes that even if Arlington did agree that both Plaintiffs have standing to assert these three grounds for facial unconstitutionality, standing is conferred by the Constitution, not by agreement. *Abbott*, 647 F.3d at 208.

However, both Plaintiffs have demonstrated serious interest in acting contrary to the Ordinance's Zoning Restrictions, Setback Requirement, and Permitting Requirements and therefore have standing to challenge these three provisions. AOH submitted a declaration stating that it has current contracts to place donation bins in other Texas cities and, but for the Ordinance, it (or its for-profit partner on its behalf) would place donation bins in Arlington. Doc. 52, Robertson Decl., 29–30. NFBTX submitted a declaration that the placement restrictions and permitting process have prevented its placement of bins in Arlington. Doc. 52, Crosby Decl., 25–26. While these declarations of intention alone might not "demonstrate that their 'alleged injury is actual or imminent rather than conjectural or hypothetical,'" Plaintiffs have shown more. *See Abbott*, 647 F.3d at 209 (quoting *Barbour*, 529 F.3d at 545) (finding that plaintiffs' declarations that "they are seriously interested in engaging in a course of conduct affected by" challenged provision was not sufficient to support standing).

NFBTX showed that it applied for permits under the Ordinance, was denied in part on the bases of placement and zoning, and participated in what it claims was a deficient appeals process. *See* Doc. 57, Pls.' App., Ex. I, 79–95; Doc. 58, Pls' App., Ex. I, 96–101; Doc. 58, Pls.' App., Exs. K–Q, 107–29. Therefore, NFB has standing to maintain a facial challenge the Zoning Restrictions, Setback Requirement, and Permitting Requirements.

AOH showed that it placed donation bins in Arlington in the years immediately preceding the Ordinance's adoption, which is relevant evidence of its intent to do so again. Doc. 58, Pls.' App., Ex. U, 142–43; Doc. 59, Pls.' App., Exs. V–W, 144–204; Doc. 60, Pls.' App., Ex. W, 205–49. AOH also showed that it applied for a permit under the Ordinance and was denied in part on the basis of the Zoning Restrictions. Doc. 60, Ex. W, 254–58; Doc. 61, Ex. X, 260, 265. Though the evidence does not show that AOH's application under the Ordinance was denied on the basis of Setback Requirement, AOH was subject to that provision. So, it is neither hypothetical nor speculative that AOH might imminently be harmed by the Setback Requirement. *See Abbott*, 647 F.3d at 209.[4] Further, AOH was actually denied a permit under the licensing scheme established by the Ordinance's Permitting Requirements. Doc. 60, Ex. W, 254–58; Doc. 61, Ex. X, 260, 265. Therefore, AOH has standing to maintain a facial challenge the Zoning Restrictions, Setback Requirement, and Permitting Requirements.

For these reasons, both Plaintiffs have standing to maintain a facial challenge to the Zoning Restrictions, Setback Requirement, and Permitting Requirements. To the extent that Plaintiffs

---

[4] In *Abbott*, the Fifth Circuit found that the plaintiff charities lacked standing to challenge a particular fee-disclosure provision within a Texas statute, when they were not subject to that provision because they did not have the type of fee arrangement regulated by that provision with any for-profit partner, and did not present evidence of intent to imminently enter such contracts. 647 F.3d at 209. By contrast, AOH was subject to the Ordinance's Setback Requirement though its permit application was not denied on that basis.

challenge any other provisions as overbroad, the Court finds that those claims are waived. *See* Doc. 56, Pls.' Resp., 36.

B.     *Whether the Ordinance Is Content Based or Content Neutral*

As both parties acknowledge, charitable solicitations are fully protected speech and at least some of the bins regulated by the Ordinance are a vehicle for such solicitations. *See, e.g.*, Doc. 51, Pls.' Br., 6–7; Doc. 48, Def.'s Br., 15–19. Therefore, the Court must first determine whether the Ordinance is a content-based or content-neutral regulation. *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 972 F.3d 696, 702 (5th Cir. 2020), *rev'd on other grounds*, 142 S. Ct. 1464 (2022). If the Ordinance is content-based, "then it is 'presumptively unconstitutional' and subject to strict scrutiny." *Id.* (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). "If the [Ordinance] is content neutral, then it is subject to intermediate scrutiny." *Id.*

The Court begins by finding that the Ordinance is facially content neutral. Then, the Court examines whether the evidence shows that the Ordinance was adopted for any content-based intent or purpose and finds that it was not.

1.     The Ordinance Is Facially Content Neutral

Facially, "restrictions on solicitation are not content based and do not inherently present 'the potential for becoming a means of suppressing a particular point of view,' so long as they do not discriminate based on topic, subject matter, or viewpoint." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1473 (2022) (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981)). Instead, "absent a content-based purpose or justification," an ordinance that facially "examine[s] . . . speech only in the service of drawing neutral, location-based

lines" and "is agnostic as to content" is content neutral and does not warrant the application of strict scrutiny. *Id.* at 1471.

Plaintiffs argue that the Ordinance is facially content based because it "explicitly targets, regulates, and limits the content and type of the speech at issue: the solicitation of donations" and therefore "targets speech based on its communicative content, i.e., what it says." Doc. 51, Pls.' Br., 17. "If the bin does not solicit donations of unwanted clothing or household items, the Ordinance does not apply." *Id.* Plaintiffs also argue that the Ordinance "defines 'donation boxes' by their function and purpose: 'any drop-off box . . . or other receptacle that is intended for use as a collection point for accepting donated . . . salvageable items of personal property'," which under *Reed* requires strict scrutiny.[5] *Id.* at 19.

Arlington responds that "the Ordinance regulates the placement and maintenance of donation boxes of any kind—for-profit, charitable or otherwise," so it is facially content neutral. Doc. 54, Def.'s Resp., 4. "Donation boxes are broadly and neutrally defined to include all types of receptacles to be used to collect salvageable, personal property, i.e. not trash receptacles." *Id.* "[T]he Ordinance . . . contains no discriminatory classifications, as the receptacles can belong to charities, non-profits, for-profits, and anything in between," it claims. Doc. 72, Def.'s Suppl. Br., 2.

Resolving whether the Ordinance is facially content based or content neutral first requires the Court to precisely define the regulated activity or interest and whether it concerns speech, expressive conduct, or both. *Texas v. Johnson*, 491 U.S. 397, 406 (1989); *see Recycle for Change v. City of Oakland*, 856 F.3d 666, 672 n.4 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 557 (2017). Plaintiffs too

---

[5] After the parties submitted their initial briefing, the Supreme Court issued the *Reagan* decision and the parties submitted supplemental briefing in light of that new controlling authority. Doc. 72, Def.'s Suppl. Br.; Doc. 73, Pls.' Suppl. Br.

broadly characterize the regulated activity as "the solicitation of donations" because the specific physical attributes of unattended donation bins are the regulation's subject. Arlington, Tex., Ordinance 18-044, § 1.02 (Aug. 21, 2018)). Arlington's definition of the regulated activity as "the placement and maintenance of donation boxes" comes closer but does not address the bins' communicative function as "silent solicitors." Doc. 54, Def.'s Resp., 4; *Abbott*, 647 F.3d at 212.

A precise definition of the regulated activity at issue in this case encompasses both its physical and communicative aspects, and this Court finds persuasive the one used by the Ninth Circuit in evaluating a similar ordinance: the Ordinance regulates "collecting, distributing, reusing, or recycling personal items—or the solicitation of items to further such activity." *Recycle for Change*, 856 F.3d at 671. Thus defined, donation bin ordinances regulate both pure speech (solicitation) and potentially communicative conduct (donation, collection, recycling, and resale) related to that solicitation, each of which might have a charitable or non-charitable purpose or function. So, regulations of donation bins are not *inherently* content-based but subject to the analysis given other physical forms of solicitation.

Applying the Supreme Court's most recent guidance on this subject, *Reagan*, the Court finds that Arlington's Ordinance is facially content neutral because it does not discriminate based on the solicitation's topic, subject matter, or viewpoint, but treats bin-based signage soliciting donations *to be deposited in that location* differently from communications soliciting donations for deposit elsewhere or pickup. *See* 142 S. Ct. at 1473–74. It is a regulation of the place and manner of the solicitation and associated donative conduct, and subject to intermediate scrutiny. *Cf. id.* at 1475 (recognizing a history and tradition of regulations making "on-/off-premises" distinctions in order "to address the

distinct safety and esthetic challenges posed by billboards *and other methods of outdoor advertising*")
(emphasis added).

The Ordinance is therefore unlike the facially content-based restrictions at issue in two of
the cases cited by Plaintiffs: *Abbott*, 647 F.3d 202; and *Baker*, 506 F. Supp. 3d 413. Doc. 51, Pls.' Br.,
14, 18–23. And it is also plainly distinguishable from the donation bin ordinance at issue in *Planet
Aid*, on which Plaintiffs also rely. *Planet Aid v. City of St. Johns*, 782 F.3d 318 (2015); Doc. 51, Pls.'
Br., 18, 23.

*Abbott* involved challenges to a Texas statute requiring for-profit operators of donation bins
to disclose whether the donated items would be sold for profit and the nature of their fee
arrangements with benefitting charities. 647 F.3d at 206. "[R]eject[ing] Texas's characterization of
the speech related to the public receptacles as mere commercial speech," and "determin[ing] that
the public receptacle disclosures at issue are charitable solicitations" entitled to full First Amendment
protection, the Fifth Circuit applied strict scrutiny and struck down the fee-arrangement disclosure
provisions. *Id.* at 213. Critically, the statute at issue in *Abbott* was content-based because it applied
only to certain types of donation-bin-based solicitations—those placed on bins operated by for-profit
companies—and required specific disclosures based on the charitable or for-profit status of the
speaker. *Id.* Further, the *Abbott* court was analyzing a statute that directly regulated "the speech
related to the [donation receptacles]" by mandating certain disclosures, not the bins' physical
attributes, placement, and location as are at issue in this case. *Id.*; *see supra* Section III(A) (limiting
Plaintiffs' facial challenge to the Zoning Restrictions, Setback Requirement, and Permitting
Requirements).

Likewise, *Baker*'s ordinance was facially content based because it carved out an exception for political signs from an otherwise-neutral location-based sign ordinance. *See Baker*, 506 F. Supp. at 417, 420 (discussing the ordinance's "political-or-not" distinction). The Arlington Ordinance is not like the one in *Baker* because it does not exempt certain donation bins from the location restrictions based on the type of message displayed by the bin. *See id.*; *cf. Watkins v. City of Arlington*, 123 F. Supp. 3d 856, 864–67, 870 (N.D. Tex. 2015) (finding a generally applicable ban on panhandling in the roadway at intersections facially content neutral).

Instead, the Ordinance is almost identical to the donation bin ordinance found to be facially content neutral in *Recycle for Change*. *See* 856 F.3d at 668–69. Like Arlington's Ordinance, the Oakland donation bin ordinance at issue in that case "applie[d] to any unattended structure that accepts" donations of salvageable personal property, "whether it be for charitable purposes or for-profit endeavors."[6] *Id.* at 670;  Arlington, Tex., Ordinance 18-044, § 2.01 (Aug. 21, 2018) (defining "person" and "donation box" without regard to charitable purpose or lack thereof).

Finally, the Court finds the instant case distinguishable from *Planet Aid*. In that case, the Sixth Circuit found a city's total ban on donation bins facially content-based because it "ban[ned]

---

[6] Plaintiffs seek to differentiate the Oakland ordinance from the Arlington Ordinance by focusing on the Arlington Ordinance's "*donation* boxes" language, which it claims is inherently tied to charitable donations, as compared to the Oakland Ordinance's more neutral "Unattended Donation Collection Box (UDCB)" language. Doc. 56, Pls.' Mot., 20. Defendants respond that the two ordinances' definitions of the regulated bins show that their scope and substance, if not their terminology, is "substantively identical." Doc. 64, Def.'s Resp., 12. The Court agrees with Arlington that the ordinances' definitions of the regulated bins and behavior are not meaningfully different. *Compare Recycle for Change*, 856 F.3d at 668–69 (noting that the Oakland Ordinance defined UDCBs as "unstaffed drop-off boxes, containers, receptacles, or similar facility that accept textiles, shoes, books and/or other salvageable personal property items to be used by the operator for distribution, resale, or recycling") *with* Arlington, Tex., Ordinance 18-044, § 2.01 (Aug. 21, 2018) ("'Donation Box' means any drop-off box, container, trailer or other receptacle that is intended for use as a collection point for accepting donated textiles, clothing, shoes, books, toys, dishes, household items, or other salvageable items of personal property.").

altogether an entire subclass of physical, outdoor objects[;] . . . those with a message about charitable solicitation and giving." 782 F.3d at 329. This Court reaches a different conclusion for two reasons.

First, the cases are factually distinguishable because Arlington's Ordinance—unlike the ordinance in *Planet Aid*—is not a total citywide ban on donation bins.[7] Plaintiffs acknowledge that the Ordinance allows bins in three "of Arlington's 28 zones," though not in the "downtown, community commercial, and mixed-use areas with retail, shopping, dining, and churches" where Plaintiffs wish to place them. Doc. 51, Pls.' Mot., 36; Doc. 56, Pls.' Resp., 6.

Second, to the extent that Plaintiffs argue that *Planet Aid* establishes that an ordinance is facially content based when it singles out one "subclass of physical, outdoor objects" (donation bins) for different regulation than "other outdoor receptacles" or "outdoor structures," the Court disagrees. *See* Doc. 51, Mot., 23 (discussing *Planet Aid*, 782 F.3d at 329). Clearly, different subclasses of outdoor structures performing different functions may require differentiated regulation. A shed is not a bin or a billboard. Recognizing this reality, *Reagan* permits reasonable regulation of the physical characteristics (time, place, and manner) of fully protected solicitations so long as the regulations do not discriminate based on *the solicitation's* topic, subject matter, or viewpoint. *See* 142 S. Ct. at 1473–74. As explained above, this Court finds that the Ordinance does not discriminate against solicitations of charitable donations of goods—which would be a content-based distinction—but regulates speech soliciting donated goods (charitable or not) for physical collection in a certain place and manner.

---

[7] "Courts disfavor wholesale bans on types of expression protected by the First Amendment, and such bans are usually invalidated on the ground that they clearly fail a 'least restrictive means' [strict scrutiny] analysis." *Denton v. City of El Paso*, 861 F. App'x 836, 840 (5th Cir. 2021) (collecting cases).

For all these reasons, the Ordinance is facially content neutral.

2.      The Ordinance Does Not Have a Content-Based Purpose or Justification

A facially content-neutral regulation may also be found to be content based and subject to strict scrutiny if it has a content-based purpose or justification.[8] *Reagan*, 142 S. Ct. at 1474.

Arlington argues that there is "no evidence that Arlington adopted the Ordinance because it disagreed with the messaging of NFB[TX], AOH, or any other charity that may seek to place a donation box in Arlington" and that its purpose is addressing blight and public safety. Doc. 48, Def.'s Br., 17 (citing *Reed*, 576 U.S. at 164). Arlington points to summary-judgment evidence including an "extensive study of the issues that accompany donation boxes and their root causes, . . . [and a] thorough deliberative process in considering and crafting the Ordinance" to show that the purpose and justification of the Ordinance concerns secondary effects, not content. *Id.*; *see* Doc. 49, Def.'s App., 5–119, 217–99.

Plaintiffs respond that "Arlington grossly mischaracterizes and exaggerates the [bins'] negative effects" by "showcasing photographs of the wors[t] examples of illegal dumping, generalizing those occurrences to all donation bins and all charities, and passing them off as everyday occurrences . . . . [when this] is not an accurate picture of donation bins in Arlington." Doc. 56, Pls.' Resp., 8–9.

---

[8] This is the reverse of the secondary-effects cases discussed and abrogated in the Fifth Circuit's *Reagan* opinion, 972 F.3d at 703 (discussing cases in which the Fifth Circuit "held that '[a] statute that appears content-based on its face may still be deemed content-neutral if it is justified without regard to the content of the speech'" (citing *Asgeirsson v. Abbott*, 696 F.3d 454, 459–60 (5th Cir. 2012)); *see also Ass'n of Club Execs. of Dall., Inc.*, 2022 WL 1642470, at *5 (discussing the current state of secondary-effects caselaw in this circuit).

Arlington's Visual Survey study is "woefully deficient for purposes of establishing narrow tailoring under any level of First Amendment scrutiny," they allege.[9] *Id.* at 9.

The Court finds that the Ordinance does not have a content-based purpose or justification but is concerned with controlling donation bins' negative secondary effects. Though Plaintiffs challenge the sufficiency of Arlington's Visual Survey to show narrow tailoring and claim that Arlington overstates the severity of the bins' secondary effects, they do not assert that the Ordinance's stated purpose and justification are pretextual. *See* Doc. 56, Pls.' Resp., 15. More to the point on summary judgment, they do not present or point to evidence of such. *See Ragas*, 136 F.3d at 458. Instead, the summary-judgment evidence shows that the Ordinance's purposes are civil beautification, controlling blight, and preventing safety issues incident to dumping at donation bins. *See* Doc. 49, Def.'s App., 5–109; 142–43; 217–99, 302.

So, the Ordinance is both facially and in fact content neutral. Therefore, intermediate scrutiny applies. *See Reagan*, 142 S. Ct. at 1474.

C.    *Intermediate Scrutiny Analysis*

"[C]ontent-neutral regulations of 'time, place, and manner of expression' . . .  are permitted when they are 'narrowly tailored to serve a significant government interest, and leave open ample

---

[9] Plaintiffs also argue that "the lesser scrutiny afforded regulations targeting . . . secondary effects . . . ha[ve] no application to content-based regulations," so the Ordinance's justification is irrelevant. *Id.* at 15 (first citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986); then citing *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50 (1976); and then citing *United States v. Playboy Ent. Grp. Inc.*, 529 U.S. 803, 815 (2000)). Since the Court finds the Ordinance facially content-neutral, the government's justification and aim in enacting the Ordinance remain relevant. *See Reagan*, 142 S. Ct. at 1474; *Reed*, 576 U.S. at 167; *see also* Doc. 56, Pls.' Resp., 15–16 (noting that "*Ward [v. Rock Against Racism*, 491 U.S. 781 (1989)] *only* applies if a law is content-neutral on its face").

-18-

alternative channels of communication.'"[10] *Serv. Emps. Int'l Union, Loc. 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

The Court first considers whether the summary-judgment evidence shows that the Ordinance serves a significant government interest, then whether it is narrowly tailored. The Court finds that the Ordinance does advance significant government interests, the Zoning Restrictions are not narrowly tailored, and the Setback Requirement is narrowly tailored.

### 1.     Substantial Government Interest

Arlington argues that well-settled law establishes that "[a] municipality may regulate expressive conduct in a public forum to protect public health, safety, and welfare." Doc. 48, Def.'s Br., 19 (citing *Beckerman v. City of Tupelo*, 664 F.2d 502, 509 (5th Cir. 1981)). "The concept of the public welfare is broad and inclusive," encompassing aesthetic and economic concerns, and "[e]ven aesthetic conditions justify reasonable time, manner and place restrictions on speech," Arlington asserts. *Id.* (first quoting *Berman v. Parker*, 348 U.S. 26, 33 (1954); then citing *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981); and then citing *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 817 (1984)). Arlington claims that precedent establishes

---

[10] Though the Ordinance regulates placement of donation bins on private property, both parties cite caselaw that either considers speech restrictions in public fora or does not draw a distinction. *Eg.*, Doc. 48, Def.'s Mot., 15 (citing *Reed*, 576 U.S. at 163) (addressing an ordinance that "prohibit[ed] the display of outdoor signs anywhere within the Town without a permit," without distinguishing between public and private property). Plaintiffs argue that "[t]he Supreme Court has ruled that the government is similarly restricted by the First Amendment in its ability to regulate speech on private property" as on public, so the public/private property distinction does not matter. Doc. 56, Pls.' Resp., 29 n.15 (citing *Watchtower Bible & Tract Soc'y of N.Y. v. Vill. of Stratton*, 536 U.S. 150, 165–66 (2002)). The Court agrees that the private/public property distinction does not affect the analysis in this case. *Cf. Reagan*, 142 S. Ct. at 1475–76 (directing the lower court to apply the public fora intermediate scrutiny analysis to an ordinance that regulated, in part, signs located on private premises).

that the interests behind this Ordinance—which "aims to reduce or eliminate blight, illegal dumping, scavenging, and other well-documented hazards to property owners, pedestrians, and the general public caused by the proliferation of unattended and unregulated donation boxes"—are substantial. *Id.* at 20 (first citing *Metromedia*, 453 U.S. at 507–08; and then citing *Recycle for Change*, 856 F.3d at 674). Plaintiffs do not challenge Arlington's characterization of the asserted interests as substantial. *See* Doc. 56, Pls.' Resp., 28–34 (addressing only overbreadth and tailoring for intermediate scrutiny).

In support of its contentions, Arlington submits evidence including the Visual Survey and Supplemental Visual Survey, Doc. 49, Def.'s App., 5–109, 217–99. These document potentially hazardous or unsightly conditions associated with donation bins located in Arlington between January and July 2018, before the Ordinance's adoption. *Id.*

The Court finds that Arlington has a substantial interest in combating blight, controlling illegal dumping, and protecting property owners, pedestrians, and drivers from safety hazards related to uncontrolled, poorly maintained, or hazardously-sited donation bins. *See Recycle for Change*, 856 F.3d at 674 (government's interest in "combat[ing] blight, illegal dumping, graffiti, and traffic impediments that endanger drivers and pedestrians" related to donation bins is substantial); *see also, e.g., Watkins*, 123 F. Supp. 3d at 867 (government interest in pedestrian and traffic safety is substantial); *Lauder, Inc. v. City of Houston*, 751 F. Supp. 2d 920, 934 (S.D. Tex. 2010), *aff'd*, 670 F.3d 664 (5th Cir. 2012) (government's interest in pedestrian safety and aesthetics is substantial); *RTM Media, L.L.C. v. City of Houston*, 518 F. Supp. 2d 866, 875 (S.D. Tex. 2007), *as amended on clarification sub nom. RTM Media LLC v. City of Houston*, 2007 WL 5006527 (S.D. Tex. Oct. 16,

2007) (government's interest in "reducing and preventing 'billboard blight' for reasons of aesthetics, traffic safety, and property values" is substantial).

### 2.      Narrowly Tailored

"In the context of intermediate scrutiny, narrow tailoring does not require that the least restrictive means be used. As long as the restriction promotes a substantial governmental interest that would be achieved less effectively without the restriction, it is sufficiently narrowly tailored." *Moore v. Brown*, 868 F.3d 398, 404 (5th Cir. 2017) (quoting *Serv. Emps. Int'l Union*, 595 F.3d at 596). However, the regulation must not "burden substantially more speech than is necessary to achieve the government's legitimate interests." *Ward*, 491 U.S. at 798–99.

### i.      Zoning Restrictions

First, Plaintiffs argue that the Ordinance is not narrowly tailored because it completely bans bin-based solicitations and associated donative conduct from twenty five of Arlington's twenty eight zoning districts. Doc. 51, Pls.' Br., 36–42 (discussing the Zoning Restrictions under strict scrutiny); Doc. 56, Pls.' Resp., 31–34 (discussing the Zoning Restrictions under intermediate scrutiny). Plaintiffs claim that the Supreme Court's opinion in *McCullen v. Coakley*, 573 U.S. 464 (2014), shows that the Ordinance fails intermediate scrutiny because it "carve[s] out a chunk of space where no First Amendment activity [is] allowed" and both "'impose[s] serious burdens on [Plaintiffs'] speech' . . . and . . . 'burden[s] substantially more speech than necessary to achieve the [government's] asserted interests.'" Doc. 56, Pls.' Resp., 29 (quoting *McCullen*, 573 U.S. at 487, 490). The three zones—"Industrial Manufacturing (IM), Light Industrial (LI), and General Commercial (GC)"—in which bins are allowed are low-traffic industrial and manufacturing zones

on the "periphery of the City" where Arlington residents are unlikely to see the messages, they say. Doc. 51, Pls.' Br., 36–37.

Plaintiffs further argue that the Zoning Restrictions "lack[] nexus" because the they "do[] not ensure that the bins are maintained in a manner that minimizes blight in any 'direct and material way'" but "protect against hypothetical future maintenance violations" by prophylactically prohibiting speech though less-restrictive alternatives are available. *Id.* at 37–39 (discussing *Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 670 (E.D. La. 2017)). The alternatives Plaintiffs suggest are allowing bins in the presently "forbidden commercial areas" and seeing if the Ordinance's maintenance requirements and system of fines and violations for permit holders who violate those requirements are effective in preventing the targeted ills, or considering "weekly pick-ups and bin inspections for all outdoor containers." *Id.* at 39–41.

Arlington responds that the Ordinance satisfies intermediate scrutiny because it "curtails no more speech than is necessary to accomplish its purpose" and leaves open ample alternative channels of speech by allowing "donation boxes in over 62% of all non-residentially-zoned land in the City, an area comprising over 7,138 acres." Doc. 48, Def.'s Br., 10–11, 21 (emphasis omitted). "By way of comparison, there are four non-residential zones in which donation boxes are not permitted: Community Commercial (3,578.5 acres), Downtown Business (105.8 acres), Limited Office (1.5 acres), and Office Commercial (576.8 acres) . . . . These zones account for approximately 37% of all non-residentially zoned land in the City."[11] Doc. 48, Def.'s Br., 11 n.10. Arlington explains that the

---

[11] Arlington asks the Court to take judicial notice of Article 2 of its Unified Development Code (UDC), which establishes the city's zoning. Doc. 48, Def.'s Br., 10 n.9. The UDC is a publicly available document accessible on the City of Arlington's website at: https://www.arlingtontx.gov/city_hall/departments/planning_development_services/land_development/zoning__unified_development_code/unified_development_code. The Court finds that it may take judicial notice of Article 2 of the UDC. *See* Fed. R.

permitted zones were chosen because the businesses and parking lots in those zones have "space to accommodate donation boxes without impeding traffic, both on and off street." Doc. 54, Def.'s Resp., 20.

There is evidence to support both parties' positions. The City's evidence shows that before the Ordinance's enactment some donation bins in the prohibited commercial zones were poorly maintained by their operators, were the targets of scavenging and illegal dumping, and posed a hazard to passers-by and vehicles. *See generally* Doc. 49, Def.'s App., 5–109, 217–99. Arlington's Code Compliance Services Manager, Brian Daugherty, submitted a declaration averring that many of the unsightly and hazardous bins documented in the Visual Survey and Supplemental Survey were located "in the Community Commercial zoned areas that comprise the city center." *Id.* at 302. Daugherty also declares that "[t]he [Ordinance's] limitation on placement of donation boxes to specific zones in the City [has] greatly assisted with code compliance." *Id.* at 303. Further, the record contains evidence that bins are currently allowed "in over 62% of all non-residentially-zoned land in the City, an area comprising over 7,138 acres," so even with the Zoning Restrictions there are many locations in which bin-based solicitations and associated conduct are permitted. *Id.* at 303.

Plaintiffs present Zoning Maps showing that IM-zoned properties, which make up most of the acreage in which bins may be located, are largely located at the City's periphery, while the smaller

---

Evid. 201.

 Regarding the UDC, Arlington states that "[n]ine of Arlington's 28 zones are residential . . . and two are mixed use," meaning they permit both commercial and residential uses, and that Plaintiffs do not wish to place donation bins in the residential zones. Doc. 40, Def.'s Br., 10 n.9 (citing Arlington, Texas, UDC, art. 2, § 2.1.2 (2021)). While Plaintiffs admit that they do not wish to place bins on residential property, Doc. 49, Def.'s App., 321; 430; they clarify that they do desire to place donation bins on non-residential (church) properties in residential zones, Doc. 56, Pls.' Resp., 12 (citing Doc. 49, Def.'s App., 430–31), presumably including partly residential mixed-use zones. *See* Doc. 51, Pls.' Br., 1 (including mixed-use areas in the list of high-traffic areas where Plaintiffs claim their speech is suppressed).

LI and CG-zoned properties are likewise clustered in a few areas. Doc. 52, Pls.' App., 4–5. But they do not present evidence of pedestrian or vehicle traffic in those areas to support their assertion that these zones are low traffic. Next, Plaintiffs point to the Ordinance itself as evidence that the Zoning Restrictions burden substantially more speech than necessary. Doc. 51, Pls.' Br., 36; Doc. 56, Pls.' Resp., 32. They argue that the Ordinance's "registration, disclosure requirement, and written authorization of the property owner" provisions, found at Section 3.03(A), (J), and (K), address the need for identification and are less intrusive than the zoning restriction. Doc. 56, Pls.' Br., 33; Arlington, Tex., Ordinance 18-044, § 3.03(A), (J)-(K) (Aug. 21, 2018). Plaintiffs also point to evidence that the City has granted only five permits since the Ordinance's adoption and has issued no violations for those bins. Doc. 56, Pls.'s Resp., 33; Doc. 49, Def.'s App., 286. Finally, they argue that the Visual Survey predates the Ordinance and that the City's post-Ordinance evidence, Daugherty's Declaration, states that "illegally placed donation boxes," remain an issue, not that the City faces "a present problem of illegal dumping, litter or trespass associated with donation bins." Doc. 56, Pls.' Resp., 33 (quoting Doc. 49, Daughtery Decl., 302). Plaintiffs each aver that they believe the Zoning Restrictions "interrupt our message and destroy the viability of [their] solicitation campaigns" in the City. Doc. 52, Pls.' App., 25, 31.

Examining the summary-judgment record, the Court finds that a fact question remains about whether Arlington's legitimate goals of preventing blight, illegal dumping and scavenging, and public safety would be achieved less effectively without the current Zoning Restrictions. *See Moore*, 868 F.3d at 404. The City's Visual Survey documents a significant problem with bins in the now-prohibited Community Commercial zones, but it predates the Ordinance's substantial registration, GPS, contact information, disclosure, and maintenance requirements. *See* Doc. 49, Def.'s App., 302.

Assuming without deciding that the Zoning Restrictions make the Ordinance more effective, the Court finds as a matter of law that they burden substantially more speech than is necessary to achieve the City's legitimate goals. *See Ward*, 491 U.S. at 798–99. The Zoning Maps submitted by Plaintiffs show that the three zones in which donation bins are currently allowed are peripheral areas, concentrated on manufacturing and industry, where they are unlikely to be seen by potential donors. Doc. 52, Pls.' App., 4–5. Daugherty's Declaration admits that the Community Commercial zones, found in areas that "comprise the city center," were excluded because of their high traffic and visibility. Doc. 49, Def.'s App., 302 (discussing "gateway" intersections). Further, the Ordinance itself is evidence that if the City's basis for selecting the three permitted zones was adequate parking lot space for the placement of bins, *see* Doc. 54, Def.'s Resp., 20, it can address that concern with space-based, not zoning-based, requirements. *See* Arlington, Tex., Ordinance 18-044, §§ 3.03(D), (I), 3.06(D)–(G),(J)–(K) (Aug. 21, 2018).

While the City need not show that its chosen regulation is the most narrowly tailored way of achieving its goals, or permit donation boxes on every corner, a ban on donation bins in all other zoning districts—unless justified by evidence that the Ordinance's other regulations and/or less restrictive zoning limitations have proven ineffective to control bin-associated ills in those areas—is not narrowly tailored. *Cf. Recycle for Change*, 856 F.3d at 675 (accepting a city's determination that a 1,000 foot siting restriction between donation bins did not burden substantially more speech than necessary to control secondary effects). The Ordinance's current Zoning Restrictions fail intermediate scrutiny on that basis.

ii.    Setback Requirement

Second, Plaintiffs assert that the Setback Requirement is unduly burdensome and prevents their charitable solicitation messages from being seen by the public. Doc. 56, Pls.' Resp., 31, 34 (citing *McCullen*, 573 U.S. at 488–90); *see, e.g.*, Doc. 49, Def.'s App., 332. Arlington argues that the Setback Requirement is reasonable, "provid[ing] that donation boxes may not be placed within the row of parking adjacent to the street right-of-way unless there is a landscape setback" and "[i]f there is not a landscape setback, a donation box will not be allowed in the row of parking adjacent to the street right-of-way unless separated by 40 feet, a distance that is less than the length of a tractor trailer." Doc. 48, Def.'s Mot., 24. Arlington claims that "AOH affirmatively supported . . . including such a requirement in the Ordinance prior to its adoption." *Id.*

The Court finds that there is no genuine issue of material fact regarding the constitutionality of the Setback Requirement, which serves Arlington's public safety and aesthetic goals and does not burden substantially more speech than necessary. Even if a lesser setback requirement might also achieve Arlington's goals, this one passes muster. *See Ward*, 491 U.S. at 800 ("So long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.").

Arlington's evidence shows that before the Ordinance some bins were surrounded by glass and other debris posing a hazard to pedestrians and vehicles, and contributed to an appearance of blight. *See, e.g.*, Doc. 49, Def.'s App., 32, 64–70, 79, 302. The Setback Requirement seeks to address these ills by locating bins and any associated debris away from roadways and sidewalks, and reducing the visual prominence of the bins from the roadway. The evidence also shows that the City selected

the current Setback Requirement after consulting with stakeholders and eliminating a screening requirement to address stakeholder visibility concerns. Doc. 49, Def.'s App., 114.

Plaintiffs' evidence that the current forty-foot Setback Requirement is overbroad or unduly burdens their speech is unpersuasive. Representatives of Plaintiffs and NFB's third-party partner testified that a setback requirement is a reasonable donation bin regulation, but take issue with the distance. Doc. 49, Def.'s App., 332, 389. Their unsupported opinions that the Setback Requirement makes it hard for potential donors to see their messages or find the bins do not create a genuine issue of material fact. The setback requirement makes Arlington's efforts to address its legitimate goals of public safety and visual attractiveness more effective, and the Court defers to the City's determination that the forty-foot limitation is appropriate. *See Ward*, 491 U.S. at 800; *cf. Recycle for Change*, 856 F.3d at 675 (accepting a city's determination that a 1,000 foot siting restriction between donation bins was a reasonable regulation).

*McCullen*, which Plaintiffs claim establishes that the setback is an unconstitutional "buffer zone" that burdens substantially more speech than necessary, is inapposite. *See McCullen*, 573 U.S. at 486–89. *McCullen* involved speakers who wanted to engage in direct, "personal, caring, consensual" conversations with potential visitors to an abortion clinic. *Id.* at 489. Because these one-on-one conversations required a close, personal interaction, the Supreme Court held that the city's content-neutral ordinance excluding the would-be speakers from a 35-foot "buffer zone" around the clinic entrances violated those speaker's First Amendment rights. *Id.* at 472, 497. Here, at least some of the regulated donation bins are "silent solicitors" for Plaintiffs and other charities. *See Abbott*, 647 F.3d at 213. But none of them seek to engage in "personal, caring, consensual" conversations with potential donors.

The Court therefore finds that the Setback Restriction survives intermediate scrutiny and is facially constitutional.

D.    *Prior Restraint*

Plaintiffs argue that the Ordinance's Permitting Requirements are a licensing scheme that is subject to strict scrutiny as a prior restraint on charitable speech. Doc. 51, Pls.' Br., 24–32.

A content-neutral law "subjecting the exercise of First Amendment freedoms to the prior restraint of a license" must have "narrow, objective, and definite standards to guide the licensing authority" and prevent its exercise of excessive discretion.[12] *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280 (5th Cir. 2003) (quoting *Se. Promotions Ltd. v. Conrad*, 420 U.S. 546, 553 (1975)); *see also Staub v. City of Baxley*, 355 U.S. 313, 322 (1958).

Plaintiffs argue that the Ordinance's Permit Requirements are a prior restraint and impermissibly infringe speech by "plac[ing] 'unbridled discretion in the hands of'" the permitting official, Doc. 51, Pls.' Br., 25 (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988)), and conditioning approval on vague, undefined, or subjective terms including "landscape setback," "in good condition," "residential dwelling use district," "40-foot setback," "landscape buffer," "provider," "owner," and "applicant." *Id.* at 26–30; *see also* Doc. 56, Pls.' Resp., 23–28. Other terms such as "City Appeal Officer" are defined, but the provided definition is "woefully insufficient to provide applicants and appellants with notice of who [that] would actually be for purposes of lodging an appeal of a denial of a permit." Doc. 51, Pls.' Br., 30. Because the Ordinance is based on these vague, undefined, or subjective terms, its enforcement is inherently "arbitrary and

---

[12] A content-based license scheme must also contain adequate procedural protections. *Baker*, 506 F. Supp. 3d 413, 421–22. Because the Ordinance is content neutral, as explained above, the Court need not address the sufficiency of the Ordinance's procedural protections.

discriminatory," and the Ordinance itself is facially unconstitutional, Plaintiffs claim. *Id.* at 31.

Arlington responds that the Ordinance is not a prior restraint because it establishes "reasonably specific, objective, and definite standards that do not leave the decision to grant or deny a permit application 'to the whim of the administrator.'" Doc. 64, Def.'s Reply, 23 (quoting *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 324 (2002)). "[T]o obtain a donation box permit, an applicant must satisfy eleven specific requirements set forth in the Ordinance and included on a standard checklist." *Id.* (citing Doc. 49, Def.'s App., 144–46). "If satisfied, a permit must be issued within sixty days," meaning city employees have no discretion to independently "determine the propriety of a permit." *Id.*

Regarding the allegedly vague and undefined terms, Arlington claims "provider," "owner," and "applicant" are "clearly understood by ordinary persons," while "landscape setback" gains clarity from the relevant provision of the Arlington Development Code, which is readily available on the City's website and "sets forth the landscape setback standards for properties on various types of roads, such as interstates, arterial collectors, and local roads." *Id.* (describing Arlington, Tex., UDC, art. 5, § 5.2.2.B, Table 5.2-1). The "in good condition" term similarly refers to violations of the Development Code. *Id.* at 23–24. Next, the "residential dwelling use district" limitation sets a 200-foot distance requirement between a "residential lot line" in "residential-zoned districts," a specific limitation that "[a]n ordinary person can easily understand," Arlington claims. *Id.* at 24 (citing Doc. 49, Def.'s App., 147). Finally, though the Ordinance does not explain "how to measure 40-feet from the public right-of-way" for the "40-foot setback" requirement, "[i]t is quite simple," Arlington maintains: "Using a measuring tape, an applicant must . . . ensure that the side of the donation box

facing the right-of-way is at least 40 feet away." *Id.* at 24. Arlington does not respond to Plaintiffs' argument that the definition of "City Appeal Officer" is inadequate. *See id.* at 23–24.

The Court finds that the Ordinance is not an unconstitutional prior restraint. The summary-judgment evidence shows that the Ordinance provides reasonably "narrow, objective, and definite standards to guide the licensing authority." *See Chiu*, 339 F.3d at 281. Plaintiffs have not pointed to any evidence supporting their claims that the terms "provider," "owner," and "applicant" are confusing or subject to multiple interpretations leading to arbitrary application or granting unbridled discretion. *See Ragas,* 136 F.3d at 458. And the terms "landscape setback" and "residential dwelling use district" are reasonably specific in the context of the UDC, with which the Ordinance is compatible when not inconsistent. *See* Arlington, Tex., Ordinance 18-044 (Aug. 21, 2018) at 9.

Though the Court agrees with Plaintiffs that the "40-foot setback" requirement could be more clearly defined, *see id.* § 3.03(I) (not including any explanation that the 40-foot setback should be measured from the front of the box to the right-of-way facing that side of the box), the requirement as written is sufficiently definite and objective to restrain an official's exercise of discretion and to allow an applicant to challenge a denial on that basis. Finally, though Arlington has not responded to Plaintiffs' argument that "City Appeal Officer" is so vague as to prevent effective appeal of an adverse permitting decision, the Court finds that the term is not so vague that an applicant cannot effectively challenge a denial via a sufficiently-defined process.[13] *See id.* §§ 2.01,

---

[13] The Court additionally notes that collection of items by unattended donation bin is not a communicative activity that is inherently time-sensitive, like a parade or public protest, which was a relevant factor in some of the prior restraint cases cited by Plaintiffs. *Cf. N.A.A.C.P., W. Region v. City of Richmond*, 743 F.2d 1346, 1356 (9th Cir. 1984) ("[T]iming is of the essence in politics . . . . [W]hen an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all.").

3.09–3.10; Doc. 49, Def.'s App., 205–08 (indicating that Plaintiff NFBTX received a hearing with the City Appeal Officer).

In sum, there is no evidence that this content-neutral Ordinance either censors speech or allows government officials unbridled discretion to limit speakers. The Ordinance is not an unconstitutional prior restraint.

## IV.

## CONCLUSION

In conclusion, for all the reasons explained above, the Court finds that: Plaintiffs have standing to bring a facial challenge to Arlington's donation bin ordinance; Plaintiffs' Partial Motion for Summary Judgment (50) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**; and Defendant's Motion for Summary Judgment (47) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**.

Specifically:

- Summary Judgment on Count I is **GRANTED IN PART** and **DENIED IN PART** for each party as follows. Ordinance 18-044 is not facially unconstitutional as a "Zoning Ban." Section 3.01(C) of Ordinance 18-044 is facially unconstitutional because it burdens substantially more speech than is necessary to advance the City's legitimate interests. Arlington is hereby **ENJOINED** from enforcing Section 3.01(C) against Plaintiffs.

- Summary Judgment on the facial challenge asserted in Count II is **GRANTED** for Defendant.

- Summary Judgment on Count III is **GRANTED** for Defendant and **DENIED** for Plaintiffs.

- Summary Judgment on Count IV is **GRANTED** for Defendant and **DENIED** for Plaintiffs.


**SO ORDERED.**

**SIGNED: September 9, 2022.**

_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-32-